E-FILED
Wednesday, 01 April, 2026  04:24:29 PM
Clerk, U.S. District Court, ILCD

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 24-CR-30013 |
| | ) | |
| AHMAUD SCHAEFFER, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This matter is now before the Court on Defendant Ahmaud Schaeffer's ("Defendant") Motion to Dismiss Indictment Because of the Second Amendment and <u>N.Y. State Rifle & Pistol Ass'n v. Bruen</u> (d/e 39). Defendant moves to dismiss the three-Count Indictment charging him with making false statements in connection with the acquisition of a firearm from a licensed dealer, arguing Section 922(a)(6) is unconstitutional, facially and as applied to him, under the United States Supreme Court's decision in <u>New York State Rifle & Pistol Ass'n v. Bruen</u>, 597 U.S. 1 (2022). The Government has responded in opposition to said Motion (d/e 42).  For the following reasons, Defendant's Motion (d/e 39) is DENIED.

Page **1** of **12**

## **BACKGROUND**

On April 2, 2024, a three-Count Indictment was filed in this Court alleging that, on or about August 25, 2022, April 27, 2023, and February 9, 2024, in Sangamon County, Illinois in the Central District of Illinois, Defendant made a false statement during the purchase of a firearm in violation of Title 18, United States Code, Sections 922(a)(6) and 924(a)(2). See d/e 17.

Specifically, the Indictment alleged that Defendant, in connection with the acquisition of a firearm from a licensed dealer of firearms within the meaning of Chapter 44, Title 18, United States Code, knowingly made a false and fictitious written statement to the licensed dealer, which statement was intended and likely to deceive the dealer as to a fact material to the lawfulness of such sale of the said firearm to the defendant under Chapter 44 of Title 18, in that the defendant represented that he was not an unlawful user of or addicted to a controlled substance as defined in Title 21, United State Code, Section 812. Id. The Indictment does not charge Defendant under any other statute. Id.

According to the Criminal Complaint in this case, Defendant filled out Bureau of Alcohol, Tobacco, and Firearm ("ATF") Form

4473 at the time of his 13 firearm purchases made between August 25, 2022 and February 12, 2024. See d/e 1, p. 4. On each form, Defendant checked "no" on Section 21, question (f) of Form 4473, which states,

> Are you an unlawful user of, or addicted to, marijuana or any depressant, stimulant, narcotic drug, or any other controlled substance? Warning: The use or possession of marijuana remains unlawful under Federal law regardless of whether it has been legalized or decriminalized for medicinal or recreational purposes in the state where you reside.

See id. at p. 5.

The Criminal Complaint states that on March 15, 2024, Defendant's person and property were searched pursuant to a warrant, law enforcement Mirandized him, and he "stated that he is a heavy marijuana smoker" and "was a heavy marijuana smoker during the year 2022." Id. at pp. 3-4. Defendant reviewed photocopies of the original Form 4473s he filled out at the time of the firearm purchases and "stated that he did lie" on Section 21, question (f) of Form 4473. Id. at p. 5.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(3) permits a defendant to move to dismiss an indictment prior to trial if the indictment

contains a defect. FED. R. CRIM. P. 12(b)(3)(B)(v). Defendant brings both a facial and an as-applied challenge in his Motion (d/e 39).

To succeed on an as-applied challenge to a statute, the movant must show that the statute is unconstitutional because of the way it is applied to the particular facts of his case. See United States v. Phillips, 645 F.3d 859, 863 (7th Cir. 2011). To succeed on a facial challenge to a statute, the movant must show that the statute is unconstitutional in all applications, such that "no set of circumstances exists under which the [a]ct would be valid." United States v. Salerno, 481 U.S. 739, 745 (1987), see also City of L.A. v. Patel, 576 U.S. 409, 415 (2015).

Section 922(a)(6) makes it unlawful, in acquiring a firearm from a licensed dealer, "knowingly to make any false or fictitious oral or written statement or to furnish or exhibit any false, fictitious, or misrepresented identification, intended or likely to deceive such [licensed dealer] with respect to any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition[.]" 18 U.S.C. § 922(a)(6). Under Section 924(a)(2), "[w]hoever knowingly violates [Section 922(a)(6)] shall be fined as provided in this title, imprisoned not more than 10 years, or both."

18 U.S.C. § 924(a)(2). Defendant alleges § 922(a)(6) violates the Second Amendment and the Indictment must be dismissed based on the framework articulated by the Supreme Court in <u>Bruen</u>. <u>See</u> d/e 39, pp. 2-5.

### A. Controlling Supreme Court Precedent

Since 2008, the Supreme Court has held that the Second Amendment protects "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." <u>District of Columbia v. Heller</u>, 554 U.S. 570, 635 (2008).  The Court noted that there is a "strong presumption that the Second Amendment right is exercised individually and belongs to all Americans." <u>Id.</u> at 581. Considering the Constitution's structure and text, the Supreme Court explained that "in all six other provisions of the Constitution that mention 'the people,' the term unambiguously refers to all members of the political community, not an unspecified subset." <u>Id.</u> at 580.

Defendant relies on this language, stating he is a member of "the people" for the purposes of the Second Amendment. <u>See</u> d/e 39, pp. 10-11. However, the Court in <u>Heller</u> cautioned that "[l]ike most rights, the right secured by the Second Amendment is not unlimited." <u>Id.</u> at 626. Further, the Supreme Court explicitly noted

that its opinion should not "be taken to cast doubt" on a number of different categories of firearms regulations. Id.

In Bruen, the Supreme Court built upon Heller and its other prior Second Amendment decisions to clarify its position on who the Second Amendment protects and how to determine whether a law is consistent with those protections. The Court restated that "the people" protected by the Second Amendment include "ordinary, law-abiding, adult citizens." Bruen, 597 U.S. at 31. This aligns with the Court's prior holdings that law-abiding citizens who are members of the political community are those who may indeed bear arms. See Heller, 554 U.S. at 580. The Court explained that the Second Amendment "surely elevates above all interests the right of law-abiding, responsible citizens to use arms" for self-defense. Bruen, 597 U.S. at 26 (quoting Heller, 554 U.S. at 635). Together, Bruen and Heller clearly establish that the Second Amendment protects the rights of responsible, law-abiding citizens to possess firearms.

The Supreme Court also announced in Bruen a new framework for analyzing Second Amendment challenges to firearms regulations. First, the presiding court must determine whether "the Second Amendment's plain text covers an individual's conduct."

Bruen, 597 U.S. at 17. "If the government can prove that the regulated conduct falls beyond the Amendment's original scope, then the analysis can stop there; the regulated activity is categorically unprotected." Id. at 18 (internal citations omitted). But, if the conduct falls within the plain text of the Second Amendment, the conduct is presumptively protected. Id. at 18. The analysis then moves to the second step, where the government bears the burden to "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." Id. at 19.

If a challenged regulation addresses a longstanding societal problem, "the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." Id. at 26. If the Founders could have adopted a particular regulation to confront a longstanding problem and did not do so, that could suggest that the law today is unconstitutional. Id. For "modern regulations that were unimaginable at the founding," the government must produce historical evidence that is "relevantly similar." Id. at 28-29.

By assessing "how and why regulations burden a law-abiding

citizen's right to armed self-defense," courts can identify historical analogues to modern firearm regulations. Id. at 29. The Supreme Court did not provide lower courts with any exhaustive list of features or factors to consider that would render a modern regulation similar enough to historical analogues to pass muster. Id. Rather, the Court directed lower courts to weigh "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified." Id.

**B. Controlling Seventh Circuit Court of Appeals Precedent**

After the Bruen decision, the Seventh Circuit Court of Appeals provided further guidance for lower courts to assess § 922(a)(6). "Ordinarily a lower court has no authority to reject a doctrine developed by a higher one." Olson v. Paine, Webber, Jackson & Curtis, Inc., 806 F.2d 731, 734 (7th Cir.1986).

In United States v. Holden, 70 F.4th 1015 (7th Cir. 2023), the Seventh Circuit noted that neither the plaintiff nor the district court found "that there is any constitutional problem with § 922(a)(6)," noting that "Congress is entitled to require would-be purchasers to provide information—their names, addresses, Social Security

numbers, criminal histories, and so on." Id. at 1017. The Second Amendment "would not prevent Congress from demanding purchasers' real names," the Seventh Circuit noted, or "interfere with the use of [Social Security] numbers to identify, and perhaps check the criminal history of, people who do have them." Id.

The Seventh Circuit found that "[t]he power to collect accurate information is of a different character—and stands on a firmer footing—than the power to prohibit particular people from owning guns." Id. Further, the Seventh Circuit found that "[g]overnments may keep firearms out of the hands of dangerous people who are apt to misuse them," citing Bruen, and that "one might think that the very act of lying to obtain a firearm implies a risk that the weapon will be misused." Id. at 1017-18.

In United States v. Scheidt, 103 F.4th 1281 (7th Cir. 2024), the Seventh Circuit explicitly affirmed its reasoning in Holden to hold that "Section 922(a)(6) restricts fraudulent statements, not firearm purchases," such that "the Second Amendment does not immunize purchasers from knowingly providing misstatements in ATF Form 4473." Id. at 1284-85. The judges reasoned:

> Ordinary information-providing requirements, like those imposed by ATF Form 4473 and enforced through criminal statutes like § 922(a)(6), do not "infringe" the right to keep and bear arms. Completing ATF Form 4473, and adhering to its attendant truth-telling requirement, is conduct that is outside the scope of the Second Amendment's protections, not requiring application of Bruen's historical analysis framework. Only in the most indirect way—and even then, too indirectly—does § 922(a)(6) implicate the right to bear arms.

Id. at 1284 (internal citations omitted). "The plain text of the Second Amendment does not cover" the submission of false information on ATF Form 4473, the Seventh Circuit found, "so there is no need to conduct a historical analysis of gun registration forms." Id.

## **ANALYSIS**

Pursuant to the Bruen framework for analyzing Second Amendment challenges to firearms regulations, this Court must first determine whether "the Second Amendment's plain text covers an individual's conduct." Bruen, 597 U.S. at 17.

The Indictment in this case charges that Defendant made multiple false statements during the purchase of a firearm in violation of Title 18, United States Code, Sections 922(a)(6) and 924(a)(2). See d/e 17. According to the Criminal Complaint,

Defendant checked "no" on Section 21, question (f) of Form 4473 but then "stated that he is a heavy marijuana smoker," "was a heavy marijuana smoker during the year 2022," and "did lie" on Section 21, question (f) of Form 4473. See d/e 1, pp. 4-5.

The Seventh Circuit held in Scheidt that "the plain text of the Second Amendment does not cover" the submission of false information on ATF Form 4473, "enforced through…§ 922(a)(6)." Scheidt, 103 F.4th at 1284. This Court both agrees with the Seventh Circuit's reasoning in Scheidt and lacks the "authority to reject [this] doctrine." Olson v. Paine, Webber, Jackson & Curtis, Inc., 806 F.2d 731, 734 (7th Cir.1986).

Therefore, this Court finds, pursuant to Bruen, that the Second Amendment's plain text does not cover Defendant's conduct of submitting false information on ATF Form 4473 in violation of § 922(a)(6). See Bruen, 597 U.S. at 17; see also Scheidt, 103 F.4th at 1284. Upon a finding that the "regulated conduct falls beyond the Amendment's original scope, then the analysis can stop there; the regulated activity is categorically unprotected." Bruen, 597 U.S. at 18 (internal citations omitted).

## CONCLUSION

Pursuant to the United States Supreme Court's decision in New York State Rifle & Pistol Ass'n v. Bruen, 597 U.S. 1 (2022) and the Seventh Circuit's decisions in United States v. Holden, 70 F.4th 1015, 1017 (7th Cir. 2023) and United States v. Scheidt, 103 F.4th 1281 (7th Cir. 2024), because the Second Amendment's plain text does not cover Defendant's conduct of submitting false information on ATF Form 4473 in violation of § 922(a)(6), Defendant's Motion (d/e 39) is DENIED.

**IT IS SO ORDERED.**
**ENTERED: April 1, 2026.**
**FOR THE COURT**

*/s/ Sue E. Myerscough*
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**